UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID E. LILLY,

        Plaintiff,

v.

TOWN OF LEWISTON, SCOTT
STAFFORD, individually and in his
official capacity as a Town of Lewiston
Police Officer, and CHRISTOPHER
SALADA, individually and in his official
capacity as Chief of Police of the Town of
Lewiston,

        Defendants.
_____

**DECISION AND ORDER**

1:18-CV-00002 EAW



## INTRODUCTION

Plaintiff David E. Lilly ("Plaintiff"), proceeding *pro se*, brings the instant lawsuit pursuant to 42 U.S.C. § 1983 and various provisions of New York state law alleging defendants Town of Lewiston ("Lewiston"), Scott Stafford ("Stafford"), and Christopher Salada ("Salada") (collectively "Defendants") illegally seized him and retaliated against him. Presently before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 7). For the reasons that follow, Defendants' motion is granted, but Plaintiff will be given the opportunity to replead.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint. (Dkt. 1). As is required on a motion such as this, the Court treats Plaintiff's allegations as true.

- 1 -

Plaintiff is a Staff Sergeant in the United States Air Force who remains on active duty. (*Id.* at ¶ 12). Since at least 2011, various members of his family have filed a number of lawsuits against New York State and Lewiston police officers. (*Id.* at ¶¶ 15-21).

In the spring of 2010, Plaintiff first encountered Stafford at Kiwanis Park in Lewiston, New York. (*Id.* at ¶ 22). Stafford asked Plaintiff if he was the son of school board member Edward Lilly, to which Plaintiff answered yes. (*Id.* at ¶ 23). Stafford issued Plaintiff an appearance ticket and then told Plaintiff: "I will be seeing you around!" (*Id.* at ¶¶ 23-24). At that time, Stafford often attended school board meetings in his uniform, and Stafford's wife would often interrupt Plaintiff's father at those meetings. (*Id.* at ¶ 25).

On December 29, 2014, Plaintiff was visiting his family in Lewiston, New York, and drove to Artpark to walk his dog. (*Id.* at ¶ 29). Plaintiff's car "has a very distinctive and unmistakable appearance" and Virginia license plates. (*Id.* at ¶ 34). Plaintiff noticed a patrol vehicle operated by Stafford drive by the parking lot, which was empty other than Plaintiff's car. (*Id.* at ¶¶ 30-31). Stafford is known to travel with a police dog. (*Id.* at ¶ 48). Stafford turned into the parking lot and positioned his vehicle behind Plaintiff's car as Plaintiff walked the dog, remaining there for a brief period and doing a license plate check before exiting the lot. (*Id.* at ¶¶ 33, 35-36). After walking his dog for around 15 minutes, Plaintiff left Artpark at approximately 4:50 p.m. (*Id.* at ¶ 37).

Plaintiff then drove less than a mile to Lewiston Landing Park, where he parked facing the Niagara River and stayed in his vehicle for a few minutes. (*Id.* at ¶¶ 38-39). Stafford again approached and positioned his patrol vehicle so as to keep Plaintiff's car from being able to move forward. (*Id.* at ¶¶ 39, 41, 48). After rolling down his window,

Stafford asked Plaintiff what he was doing at Artpark. (*Id.* at ¶ 50). Plaintiff told Stafford he was walking his dog and taking pictures. (*Id.*). Stafford asked Plaintiff a few more questions before asking for Plaintiff's name, and then he brought up a previous encounter with Plaintiff at Kiwanis Park in 2010. (*Id.* at ¶¶ 51-52, 55). Stafford continued to question Plaintiff and comment about past events. (*Id.* at ¶ 56). Plaintiff "had no interest in answering Stafford's questions or listening to harsh statements." (*Id.* at ¶ 57). On March 30, 2015, Plaintiff filed a notice of claim against Defendants for unlawful seizure and retaliation with malicious intent. (*Id.* at ¶ 91).

Plaintiff commenced the instant lawsuit on January 2, 2018. (Dkt. 1). Defendants filed their Answer on April 18, 2018 (Dkt. 2), and on June 22, 2018, they filed the instant motion (Dkt. 7). No response was submitted.

## DISCUSSION

### I. Legal Standard

"Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *McAuliffe v. Barnhart*, 571 F. Supp. 2d 400, 402 (W.D.N.Y. 2008). "In deciding a Rule 12(c) motion for judgment on the pleadings, the court should 'apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *Aboushama v. EMF Corp.*, 214 F. Supp. 3d 202, 205 (W.D.N.Y. 2016) (quoting *Mantena v. Johnson*, 809 F.3d 721, 727-28 (2d Cir. 2015)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

When a plaintiff proceeds *pro se*, the Court is "obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

II. **Section 1983 Claims**

The Court begins with Plaintiff's claims arising under 42 U.S.C. § 1983, over which this Court has original jurisdiction. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Section 1983 provides a federal cause of action against persons who, under color of state authority, caused the deprivation of any rights, privilege, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Municipalities and other local government entities are considered "persons" under § 1983. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Here, Plaintiff alleges Defendants violated his First and Fourth Amendment rights, as incorporated by the Due Process Clause of the Fourteenth Amendment, pursuant to § 1983.

A. **Fourth Amendment Claims**

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause[.]" U.S. Const. amend IV. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quotation and citation omitted).

"Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). The Second Circuit has held:

> Pertinent factors identifying a police seizure can include the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory; prolonged retention of a person's personal effects, such as airplane tickets or identification; and a request by the officer to accompany him to the police station or a police room.

*Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 340 (2d Cir. 2000).

Additionally, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). "This form of investigative detention is now known as a *Terry* stop." *Davis v. City of New York*, 959 F. Supp. 2d 324, 333 (S.D.N.Y. 2013).

"While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "The officer [making a *Terry* stop] . . . must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch."'" *Alabama v. White*, 496 U.S. 325, 329 (1990) (alterations in original) (quoting *Terry*, 392 U.S. at 27). "Reasonable suspicion is an objective standard; hence, the

subjective intentions or motives of the officer making the stop are irrelevant." *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000).

"In assessing the reasonableness of an officer's suspicion, we must take into account the totality of the circumstances and must evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016). "[T]he proper inquiry is not whether each fact considered in isolation denotes unlawful behavior, but whether all the facts taken together support a reasonable suspicion of wrongdoing." *United States v. Lee*, 916 F.2d 814, 820 (2d Cir. 1990). "It is sometimes the case that a police officer may observe 'a series of acts, each of them perhaps innocent in itself, but which taken together warrant[ ] further investigation.'" *Ligon v. City of New York*, 925 F. Supp. 2d 478, 489 (S.D.N.Y. 2013) (alteration in original) (quoting *Terry*, 392 U.S. at 22).

Defendants contend that Plaintiff's encounter with Stafford was consensual, and that regardless the encounter at most constitutes a *Terry* stop. (Dkt. 7-3 at 14-21). The Court does not determine whether the encounter was consensual[1] because it finds that even if it

---

[1] While courts within this Circuit have generally indicated that reasonable suspicion is required for an officer to block a car, *see, e.g.*, *United States v. Perea*, 986 F.2d 633, 644 (2d Cir. 1993) ("The fact that agents have used their cars to block a vehicle does not necessarily mean that, instead of a *Terry* stop, there was a *de facto* arrest."), the Second Circuit has not addressed the issue of whether it is a seizure if an officer blocks a person's car without reasonable suspicion when the person did not intend to move the car and could get out of the vehicle. However, the Eleventh Circuit has found reasonable suspicion is not necessary in such circumstances, *see Miller v. Harget*, 458 F.3d 1251, 1258 (11th Cir. 2006) (holding there was no seizure because the plaintiff "intended to walk to his [hotel] room after voluntarily parking the car. It is not dispositive that [the officer] would have prevented [the plaintiff] from backing [the] car out of the parking space. . . . In the instant matter, [the plaintiff] did not [allege] that he had any intent to back out of the parking space

was not, the facts alleged in the Complaint would have given Stafford reasonable suspicion with which to question Plaintiff, and therefore the incident at issue was at most a *Terry* stop.

Plaintiff alleges that in the middle of winter, and around sunset,[2] his car was the only car in the parking lot of Artpark. (Dkt. 1 at ¶ 29). He also alleges that his car "has a very distinctive and unmistakable appearance," as well as out-of-state license plates, and that Stafford saw his car at Artpark. (*Id.* at ¶¶ 30-31, 34); *see Bayless*, 201 F.3d at 134 (holding that factors such as the time of day and the person's out-of-state license plates "take on added significance" in determining reasonable suspicion when joined with other factors). Further, the Complaint alleges that very shortly after Stafford saw his car at Artpark, Plaintiff's distinctive-looking vehicle was the only car in the parking lot of a different park, which Stafford drove by and saw. (*Id.* at ¶¶ 38-39). Plaintiff also alleges he did not get out of his car at the second park and had been sitting in his car for several minutes when Stafford approached. (*Id.* at ¶ 38). Moreover, the Complaint alleges Stafford had previously issued Plaintiff an appearance ticket while at Kiwanis Park. *See Leinart v. Bundy*, No. 3:09CV9(HBF), 2017 WL 1020971, at *10 (D. Conn. Mar. 16, 2017)

---

when [the officer] pulled up behind him."), and the Sixth Circuit has hinted that it takes such a stance, *see O'Malley v. City of Flint*, 652 F.3d 662, 669 (6th Cir. 2011) ("[The plaintiff] not only reasonably thought he was free to leave his vehicle at the time of the alleged seizure, but in fact had left it and was walking away.").

[2]  The Court takes judicial notice that on December 29, 2014, sunset was at 4:48 p.m. in Lewiston, NY. *See* 2014 Sun Graph for Lewiston, Time and Date, https://www.timeanddate.com/sun/@5124307?month=12&year=2014 (last visited May 16, 2019); *see Grant v. City of New York*, No. 15-CV-3635 (ILG) (ST), 2019 WL 1099945, at *3 n.10 (E.D.N.Y. Mar. 8, 2019) (taking judicial notice of the time of sunset).

("Criminal history is but one of many factors that can support a finding of reasonable suspicion."), *aff'd*, 761 F. App'x 47 (2d Cir. 2019); *United States v. Chandler*, No. 15-CR-131 (JMA)(SIL), 2016 WL 4076875, at *2 (E.D.N.Y. Aug. 1, 2016) (holding criminal history along with other information obtained by the police officer gave rise to reasonable suspicion).

The Court finds that these circumstances taken together, *i.e.*, an out-of-state car, distinctive in appearance, owned by someone who was issued a criminal appearance ticket, being spotted at two different parks within minutes in the middle of winter and close to dark, viewed through the eyes of a reasonable police officer, support a reasonable suspicion of some sort of wrongdoing that warranted further investigation. *See United States v. Santillan*, 902 F.3d 49, 57 (2d Cir. 2018) (holding the circumstances were sufficient to provide the police officer "with articulable and specific facts leading him to believe that the two men may have been involved in some type of criminal activity" and gave him "the authority to investigate further"). Additionally, Plaintiff's allegation that Stafford stopping him "was motivated by retaliation" is not dispositive because "the subjective intentions or motives of the officer making the stop are irrelevant." *Bayless*, 201 F.3d at 133.

"For an investigative stop based on reasonable suspicion to pass constitutional muster, the ensuing investigation must be reasonably related in scope and duration to the circumstances that justified the stop in the first instance, so as to be minimally intrusive of the individual's Fourth Amendment interests." *United States v. Glover*, 957 F.2d 1004, 1011 (2d Cir. 1992). The Complaint alleges that when Stafford questioned Plaintiff, he did so from his car with the window rolled down and asked questions like what Plaintiff's

name was and what he had been doing at Artpark, as well as commented about their encounter at Kiwanis Park in 2010. (*Id.* at ¶¶ 50-56). The Court finds that stopping Plaintiff "to determine his identity or to maintain the status quo momentarily while obtaining more information" was "reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146 (1972); *see Hiibel v. 6th Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177, 186 (2004) ("[Q]uestions concerning a suspect's identity are a routine and accepted part of many *Terry* stops."); *see Hayes v. Florida*, 470 U.S. 811, 816 (1985) ("[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information.").

The Court additionally finds that discussing a previous incident where a criminal appearance ticket was issued in a similar location was reasonably related in scope to Stafford's investigation. *See United States v. Tehrani*, 49 F.3d 54, 57, 62 (2d Cir. 1995) (finding the officer's questions about the individual's criminal history were permissible in scope); *see also United States v. Gori*, 230 F.3d 44, 57 (2d Cir. 2000) (upholding detention without probable cause where the officer's "questions served the purpose of readily confirming or dispelling a reasonable suspicion, involved no more intrusion than necessary to accomplish the purposes of his investigation, and thereby fit comfortably within the limits authorized by *Terry*"). Moreover, Plaintiff has made no allegations as to how long Stafford's questioning lasted, let alone that it was unreasonable in duration. *See Tehrani*, 49 F.3d at 61 (upholding a 30-minute *Terry* stop where "no force was required and none

was used," the agent made diligent inquiries, and no suggestion was made as to how the agent could have acted more quickly).

Because the facts alleged by Plaintiff would give rise to reasonable suspicion in a police officer, and the Complaint fails to allege facts sufficient to find that Stafford's alleged questioning was unreasonable in scope or duration, Plaintiff's Fourth Amendment claims are dismissed.

B. **First Amendment Retaliation**

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013). "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). "Speech directed at police officers will be protected unless it is likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest." *Kerman*, 261 F.3d at 242.

To the extent Plaintiff alleges that Defendants retaliated against him for the lawsuits filed by his family members and the criticism of police by his father and uncle, such allegations do not state a First Amendment claim. "[T]he plaintiff him or herself must have engaged in the protected activity; not some person or entity with which the plaintiff is associated." *Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 374 (N.D.N.Y. 2003), *aff'd*, 83 F. App'x 363 (2d Cir. 2003); *see Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir. 1991)

(holding that plaintiff failed to establish retaliation because a corporation engaged in the protected activity, not plaintiff), *abrogated on other grounds*, *Washington v. County of Rockland*, 373 F.3d 310 (2d Cir. 2004). Additionally, Plaintiff has not alleged that he himself engaged in any protected activity. The only interaction Plaintiff allegedly had personally with any Defendants before the 2014 incident was a 2010 encounter with Stafford in Kilwanis Park, and Plaintiff does not allege that Stafford witnessed him criticizing the police or engaging in any sort of other protected activity either during that encounter or before. Moreover, the Complaint does not allege that Plaintiff's speech was chilled, and because the Court finds he has not properly alleged that his Fourth Amendment rights were violated, he has not alleged that he suffered some other concrete injury as a result of the encounter with Stafford. *See Dorsett*, 732 F.3d (holding plaintiffs failed to state a retaliation claim because their speech was not curtailed, and they did not suffer a concrete injury as a result of the alleged conduct); *Brown v. Goord*, No. 9:04-CV-0785, 2007 WL 607396, at *14 (N.D.N.Y. Feb. 20, 2007) (dismissing plaintiff's retaliation claim because he did not show that his Fourth Amendment rights were violated). Accordingly, Plaintiff's First Amendment claims are dismissed.

C. **Conspiracy**

Plaintiff alleges that Defendants conspired to seize him. (Dkt. 1 at ¶¶ 62, 70, 84). To state a conspiracy claim in violation of constitutional rights under § 1983, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200

F.3d 65, 72 (2d Cir. 1999). As discussed above, Plaintiff has failed to allege that his constitutional rights were violated, and therefore his conspiracy claim is also dismissed.

### D. Claims Against Lewiston

"[T]o establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2018)). "[T]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to . . . prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. To survive a motion to dismiss, the plaintiff "cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (quotation omitted).

> A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it

amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010).

As discussed above, Plaintiff has not established that he suffered a constitutional injury. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding the city and police commission could not be held liable because the police officer did not inflict a constitutional injury). Additionally, his allegations are not sufficient to establish that a policy or custom exists. Plaintiff alleges that "[t]he Lewiston Police Department is well known for proudly practicing their policy of 'Show of Force,'" and states it demonstrates its "'Show of Force' intimidation and retaliation tactics by widely [publicizing its] actions in newspapers and on television." (Dkt. 1 at ¶ 59). Although alleging that the "Show of Force" policy is widespread, he does not allege any facts detailing the nature of the policy. *See, e.g., Khaja-Moinuddin v. City of New York*, No. 09-CV-646 (CBA)(LB), 2010 WL 3861003, at *10 (E.D.N.Y. Sept. 28, 2010) (holding the *pro se* plaintiff's "bald assertion that 'there is a pattern of biased conduct by the NYPD and its officers against men' and his narrative account of biased conduct in conjunction with his friend's arrest, does not suffice to satisfy a *Monell* claim." (citation omitted)); *Jackson v. Onondaga County*, 549 F. Supp. 2d 204, 224 (N.D.N.Y. 2008) (dismissing the *pro se* plaintiff's municipal claims because the allegations did not plausibly suggest a formal policy, "a practice so widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge of the practice to policymaking officials," or a failure by policymakers to train the deputies); *see also Triano*, 895 F. Supp. 2d at 535-37 (collecting cases). Plaintiff's vague and conclusory

- 14 -

allegations do not, without more, adequately allege a policy or custom, let alone one that violated his constitutional rights, and therefore must be dismissed.

### E. Supervisory Claims

A supervisory defendant must have been personally involved in a constitutional deprivation to be held liable under § 1983. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *see Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("Supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." (citation omitted)). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Personal involvement may be shown where:

> A supervisory official, after learning of the violation through a report or appeal, . . . failed to remedy the wrong[;] . . . created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue[; or] . . . was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Williams*, 781 F.2d at 323-24 (citations omitted). However, a "'plaintiff cannot base liability solely on the defendant's supervisory capacity or the fact that he held the highest position of authority' within the relevant governmental agency or department." *Houghton v. Cardone*, 295 F. Supp. 2d 268, 276 (W.D.N.Y. 2003) (citation omitted); *see also Montero v. Travis*, 171 F.3d 757, 761-62 (2d Cir. 1999) (finding a claim against a parole board chairman was "properly dismissed as frivolous because [the plaintiff] never alleged any facts describing [the chairman's] personal involvement in the claimed constitutional violations").

Plaintiff's allegations that his father has complained to Salada "about how his officers repeatedly menace citizens," and that Salada has taken no action with regard to these complaints (*id.* at ¶ 60) are not sufficient to state a claim against Salada. Plaintiff has failed to allege that his constitutional rights were violated, so his supervisory claims must also fail. Additionally, Plaintiff has failed to allege the existence of a policy or custom that Salada allowed to continue. Accordingly, the claims against Salada must also be dismissed.

### III. <u>State Law Claims</u>

Plaintiff also brings claims pursuant to state law. A district court "may decline to exercise supplemental jurisdiction" over state law claims if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *see Klein & Co. Futures v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."); *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) ("The Court has the discretion to dismiss plaintiff's pendent state law claim[s] for lack of subject matter jurisdiction when it dismisses all of the federal question claims in a complaint."), *aff'd*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122 (2d Cir. 2008). Having found that Plaintiff has failed to state a claim under § 1983, the Court declines to address Plaintiff's state law claims at this time.[3]

---

[3] Because the Court has dismissed all of Plaintiff's claims, the Court does not address Defendants' argument that Plaintiff failed to comply with New York General Municipal

## IV. Leave to Replead

While the Court finds that Plaintiff's Complaint failed to state a claim, it takes his *pro se* status into account and will give him the opportunity to replead. "[A] pro se complaint is to be read liberally," and should not be dismissed without granting leave to replead at least once when such a reading "gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (quotation omitted); *see Schindler v. French*, 232 F. App'x 17, 18-19 (2d Cir. 2007) (holding it is the usual practice to allow a *pro se* plaintiff leave to replead after granting a 12(b)(6) motion to dismiss); *Festa v. Local 3 Int'l Bhd. Of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990) ("[T]he Rule 12(b)(6) dismissal was proper because the [*pro se* plaintiff's] allegations against the [defendant] were conclusory. The court also properly granted leave to amend."). Accordingly, Defendant's motion pursuant to Rule 12(c) is granted, and the Complaint is dismissed without prejudice. Within thirty (30) **days from the date of this Decision and Order**, Plaintiff may file an amended complaint containing the necessary allegations regarding his claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to **completely replace** the prior complaint in the action. "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139

---

Law § 50-h, or that Plaintiff's request for punitive damages should be dismissed. The Court may revisit these arguments in the event that Plaintiff files an amended complaint and Defendants renew their motion.

F.3d 329, 332 n.4 (2d Cir. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, Plaintiff's amended complaint must include all of the allegations against Defendants so that the amended complaint may stand alone as the sole complaint in this action which Defendants must answer.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for judgment on the pleadings (Dkt. 7) is granted, but Plaintiff will be given the opportunity to file an amended complaint within thirty (30) days from the date of this Decision and Order. If Plaintiff does not file an amended complaint as directed above, the Clerk of Court shall close this case as dismissed with prejudice without further order.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: June 17, 2019
       Rochester, New York