UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID E. LILLY,

               Plaintiff,

     v.

TOWN OF LEWISTON, SCOTT
STAFFORD, individually and in his
official capacity as a Town of Lewiston
Police Officer, and CHRISTOPHER
SALADA, individually and in his official
capacity as Chief of Police of the Town of
Lewiston,

               Defendants.
_____

**DECISION AND ORDER**

1:18-CV-00002 EAW

## **INTRODUCTION**

Plaintiff David E. Lilly ("Plaintiff"), proceeding *pro se*, brings the instant lawsuit pursuant to 42 U.S.C. § 1983 and New York state law alleging defendants Town of Lewiston ("Lewiston"), Scott Stafford ("Stafford"), and Christopher Salada ("Salada") (collectively "Defendants") illegally seized him and retaliated against him. Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. 11). For the reasons that follow, Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted in part and denied in part, and Defendants' motion to dismiss pursuant to Rule 12(b)(1) is denied as moot.

## BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint. (Dkt. 10).[1] As is required at this stage of the proceedings, the Court treats Plaintiff's well-pleaded allegations as true.

Plaintiff entered the United States Air Force on or about July 26, 2011, where he advanced to the rank of staff sergeant before honorably separating from the Air Force on or about January 25, 2018. (*Id.* at ¶¶ 22-25). On December 29, 2014, at 4:00 p.m., Plaintiff was visiting his parents in Lewiston, New York, and drove to Artpark to walk his golden retriever and take photographs. (*Id.* at ¶ 36). Artpark enjoys over 150,000 visitors annually, and these visitors include numerous individuals with vehicles bearing license plates, registration, and/or inspection stickers issued by states other than New York. (*Id.* at ¶¶ 34-35). Plaintiff drives a 1994 Toyota compact pickup truck with valid Virginia license plates, registration, and inspection stickers.[2] (*Id.* at ¶ 38). He parked in a parking lot at Artpark, where he observed at least two other vehicles parked in the same lot as him. (*Id.* at ¶¶ 38-39).[3]

---

[1] Allegations from Plaintiff's original Complaint have been noted where relevant. (Dkt. 1).

[2] Plaintiff attached several pictures of his vehicle to his original Complaint. (Dkt. 1 at 14-15).

[3] In the original Complaint, Plaintiff alleged the parking lot was empty other than his vehicle. (Dkt. 1 at ¶¶ 30-31).

While walking his dog, Plaintiff noticed a Lewiston Police Department Patrol SUV stop behind his vehicle for approximately 30 seconds. (*Id.* at ¶¶ 40, 44). Plaintiff alleges he was unable to identify the occupant of the patrol vehicle at that time, but that upon information and belief it was Stafford. (*Id.* at ¶¶ 43, 45).[4] Stafford requested a license plate search of Plaintiff's vehicle, but not of the other two vehicles in the parking lot. (*Id.* at ¶¶ 46-47). Stafford did not immediately receive back any identification information about Plaintiff's vehicle. (*Id.* at ¶ 64). Plaintiff waved at Stafford in an attempt to identify himself as the owner of the vehicle, but was not acknowledged by Stafford. (*Id.* at ¶ 48). Plaintiff continued to walk his dog, and observed Stafford exit the lot Plaintiff's car was in to park in the main Artpark parking lot next to the only entrance and exit road to Artpark. (*Id.* at ¶¶ 49, 53). Numerous other vehicles were parked in the main parking lot, but Stafford did not run a license plate check on any of those vehicles. (*Id.* at ¶¶ 50-52).

Plaintiff returned to his truck, and at approximately 4:45 p.m. he drove past Stafford and began driving from Artpark to the Sand Docks at Lewiston Landing Park,[5] which was

---

[4]     Plaintiff alleges in the original Complaint that he recognized the driver of the patrol vehicle as Stafford. (Dkt. 1 at ¶ 31).

[5]     Defendants note that Plaintiff originally alleged that the alleged events took place at "Lewiston Landing Park," but now alleges the events occurred at the "Sand Docks," and Defendants contend the pleadings are not clear as to whether it is the same location. (Dkt. 11-7 at 16 n.2; *compare* Dkt. 1 at ¶ 38, *with* Dkt. 10 at ¶ 61). However, the Court takes judicial notice of the map of Lewiston Landing Park, *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 259 n.13 (E.D.N.Y. 2010) ("Courts commonly use internet mapping tools to take judicial notice of distance and geography." (collecting cases)), which matches the map attached to the Amended Complaint that purports to represent the Sand Docks parking lot, *compare* Lewiston Landing Park, Google Maps, https://www.google.com/maps/place/Lewiston+Landing+Park/@43.1740649,-79.049342

about one mile away.  (*Id.* at ¶¶ 60-61).  The Sand Docks provide a panoramic view of the Niagara River and Canada, and attract numerous visitors, including individuals with out-of-state vehicles.  (*Id.* at ¶¶ 57-59).  Plaintiff arrived at the Sand Docks parking lot at approximately 4:50 p.m., and backed his vehicle into a parking space so that his vehicle was facing west toward the sunset.[6]  (*Id.* at ¶ 70).  There was a steep embankment behind Plaintiff's vehicle, and vacant parking spaces to either side.  (*Id.* at ¶¶ 71-72).  Plaintiff began taking photographs of the Niagara River and Canada from his car.  (*Id.* at ¶ 76).

Stafford entered the Sand Docks parking lot and instead of parking in one of the vacant spots next to Plaintiff, he stopped at a 90-degree angle immediately in front of Plaintiff's vehicle, blocking the truck between the patrol vehicle and the embankment.  (*Id.* at ¶¶ 78-80).  Plaintiff saw a dog in the car, and believed the dog to be a canine named Taser.  (*Id.* at ¶¶ 87-88).  Plaintiff alleges that "[b]ased upon information and belief, Taser, among other things, was trained to be aggressive and/or intimidating," and that the Lewiston Police Department had knowledge that Taser was aggressively trained.  (*Id.* at ¶¶ 92-93).  Plaintiff placed both of his hands on his steering wheel.  (*Id.* at ¶ 100).  Stafford stayed in his patrol vehicle and lowered his driver window, and Plaintiff used his left hand

_____

1,19z/data=!4m5!3m4!1s0x89d35dc6998e74af:0x35316f9949b01e21!8m2!3d43.173701 1!4d-79.0492831?hl=en-US (last visited Mar. 19, 2020), *with* (Dkt. 10 at 17).

[6]      In its previous Decision and Order, the Court took judicial notice that on December 29, 2014, sunset was at 4:48 p.m. in Lewiston, NY.  (Dkt. 9 at 8 n.2); *see* 2014 Sun Graph for Lewiston, Time and Date, https://www.timeanddate.com/sun/@5124307?month=12& year=2014 (last visited May 16, 2019); *see also Grant v. City of New York*, No. 15-CV-3635 (ILG) (ST), 2019 WL 1099945, at *3 n.10 (E.D.N.Y. Mar. 8, 2019) (taking judicial notice of the time of sunset).

to lower his driver-side window before placing his hand back on the steering wheel. (*Id.* at ¶¶ 101-02). Stafford stated that he saw Plaintiff at Artpark and asked Plaintiff what he had been doing there. (*Id.* at ¶ 103). Plaintiff told Stafford he had been walking his dog and taking photographs. (*Id.* at ¶ 104). Stafford then asked Plaintiff if he was Edward Lilly's son, to which Plaintiff responded yes. (*Id.* at ¶¶ 105-06). Next, Stafford asked if "he knew Plaintiff from Kiwanis Park," and Plaintiff "indicated affirmatively." (*Id.* at ¶¶ 107-08). Plaintiff asked Stafford "why Plaintiff was being seized," but Stafford did not answer and instead asked Plaintiff "a series of additional questions" which continued for approximately 10-15 minutes. (*Id.* at ¶¶ 111-14).

Plaintiff commenced the instant lawsuit on January 2, 2018. (Dkt. 1). Defendants filed their Answer on April 18, 2018 (Dkt. 2), and on June 22, 2018, they filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 7). The Court granted Defendants' motion on June 17, 2019, and dismissed Plaintiff's claims without prejudice and with leave to replead. (Dkt. 9). On July 16, 2019, Plaintiff submitted an Amended Complaint. (Dkt. 10). Defendants filed the instant motion to dismiss on July 30, 2019 (Dkt. 11), and no response to the motion was filed.

## DISCUSSION

### I.    Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court

should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

When a plaintiff proceeds *pro se*, the Court is "obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

## II.     <u>Section 1983 Claims</u>

The Court begins with Plaintiff's claims arising under 42 U.S.C. § 1983, over which this Court has original jurisdiction. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Section 1983 provides a federal cause of action against persons who, under color of state authority, caused the deprivation of any rights, privilege, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Municipalities and other local government entities are considered "persons" under § 1983. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Here, Plaintiff alleges Defendants violated his First, Fourth, and Fourteenth Amendment rights pursuant to § 1983.

### A.     <u>Fourth Amendment Claims</u>

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause[.]" U.S. Const. amend IV. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quotation and citation omitted). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). The Second Circuit has explained:

> Pertinent factors identifying a police seizure can include the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory; prolonged retention of a person's personal effects, such as airplane tickets or identification; and a request by the officer to accompany him to the police station or a police room.

*Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 340 (2d Cir. 2000).

Additionally, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). "This form of investigative detention is now known as a *Terry* stop." *Davis v. City of New York*, 959 F. Supp. 2d 324, 333 (S.D.N.Y. 2013).

"While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "The officer [making a *Terry* stop] . . . must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch."'" *Alabama v. White*, 496 U.S. 325, 329 (1990) (alterations in original) (quoting *Terry*, 392 U.S. at 27). "Reasonable suspicion is an objective standard; hence, the subjective intentions or motives of the officer making the stop are irrelevant." *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000).

"In assessing the reasonableness of an officer's suspicion, we must take into account the totality of the circumstances and must evaluate those circumstances through the eyes

of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016). "[T]he proper inquiry is not whether each fact considered in isolation denotes unlawful behavior, but whether all the facts taken together support a reasonable suspicion of wrongdoing." *United States v. Lee*, 916 F.2d 814, 820 (2d Cir. 1990). "It is sometimes the case that a police officer may observe 'a series of acts, each of them perhaps innocent in itself, but which taken together warrant[ ] further investigation.'" *Ligon v. City of New York*, 925 F. Supp. 2d 478, 489 (S.D.N.Y. 2013) (alteration in original) (quoting *Terry*, 392 U.S. at 22).

As they did in their motion for judgment on the pleadings, Defendants contend that Plaintiff's encounter with Stafford was consensual, and that regardless the encounter at most constitutes a lawful *Terry* stop. (Dkt. 11-7 at 10-20; *see* Dkt. 7-3 at 14-21). The Court finds that Plaintiff has stated a claim for violation of his Fourth Amendment rights against Stafford for the reasons that follow.

### 1. **Consensual Encounter**

Plaintiff alleges that Stafford blocked his parked truck with a police SUV to question him and that this amounts to a seizure. Defendants argue that this Court should follow the Eleventh Circuit's holding in *Miller v. Harget*, 458 F.3d 1251, 1258 (11th Cir. 2006) (holding there was no seizure because the plaintiff "intended to walk to his [hotel] room after voluntarily parking the car. It is not dispositive that [the officer] would have prevented [the plaintiff] from backing [the] car out of the parking space. . . . In the instant matter, [the plaintiff] did not [allege] that he had any intent to back out of the parking space when [the officer] pulled up behind him."), and cite several cases within this Circuit in

support of the proposition that blocking a person's car is not sufficient to constitute a seizure, *see Rotbergs v. Guerrera*, No. 3:10CV1423 MRK, 2012 WL 1204729, at *8 (D. Conn. Apr. 11, 2012) ("Even if Officer Guerrera did block Mr. Rotbergs's exit with his car, such a blockage is not sufficient to constitute a Fourth Amendment seizure."); *United States v. Perez*, No. 01 CR. 848 (SWK), 2002 WL 1835601, at *10 (S.D.N.Y. Aug. 8, 2002) (finding that two officers parking in such a way as to prevent a person from moving his vehicle "without more, does not indicate that a seizure took place"); *United States v. Baldwin*, No. CR. 3:97CR188 (AHN), 1998 WL 563851, at *3 (D. Conn. 1998) ("[E]ven if [the plaintiff's] car was blocked in front and in the rear, that fact, in isolation, is insufficient to render the encounter a seizure in light of the totality of the circumstances which indicate that the officers' conduct was not restraining or coercive.").

However, in *Pane v. Gramaglia*, 509 F. App'x 101, 103 (2d Cir. 2013), the Second Circuit ruled a "reasonable police officer would have known from established precedent that having a fellow officer pull a marked police car with activated turret lights behind [the plaintiff]'s parked car, thereby effectively blocking her movement, and directing the vehicle's spot light toward the interior of [the plaintiff]'s vehicle constituted a seizure that required reasonable suspicion." Although Defendants correctly note that the officer in *Pane* activated his turret lights behind the car, and more than one officer was involved in the incident, the Second Circuit stated such conduct "effectively block[ed]" the plaintiff's movement, and cited numerous cases holding that a seizure occurred where a police car blocked a suspect's vehicle. *Id.* Even one of the cases discussed above that was cited by Defendants indicates that while police blocking a parked vehicle did not necessarily mean

there was an arrest, the conduct did at least constitute a *Terry* stop. *Perez*, 2002 WL 1835601, at \*10; *see also United States v. Perea*, 986 F.2d 633, 644 (2d Cir. 1993) ("The fact that agents have used their cars to block a vehicle does not necessarily mean that, instead of a *Terry* stop, there was a *de facto* arrest."); *United States v. Lopez*, __ F. Supp. 3d __, No. 3:18-CR-137(RNC), 2020 WL 113774, at \*7 (D. Conn. Jan. 10, 2020) ("A seizure amounting to a *Terry* stop occurs when an officer uses his patrol car to 'box in' an individual's car, preventing the suspect from driving away."). Further, unlike the plaintiff in *Miller*, here Plaintiff's allegations do not indicate that Plaintiff intended to exit his vehicle after parking—to the contrary, Plaintiff alleges that he stayed in his truck to take pictures after arriving at the Sand Docks. (Dkt. 10 at ¶¶ 70, 76).

Here, as with any Fourth Amendment analysis, whether Stafford's actions constituted a seizure depends on the totality of the circumstances. Plaintiff has alleged that his vehicle was blocked by Stafford's at a 90 degree angle, thus boxing him into the parking spot with a steep embankment behind him, and that Stafford remained in this position for 10-15 minutes (an allegation that was missing from the initial Complaint). Under the circumstances, Plaintiff has plausibly alleged that he was seized, and Defendants' argument that the stop was consensual cannot be resolved at this stage of the proceedings.

### 2. <u>Reasonable Suspicion</u>

Defendants also argue that even if the Court finds the encounter was not consensual, Plaintiff has failed to adequately allege that Stafford did not have reasonable suspicion to temporarily detain and question him. The Court disagrees for the following reasons.

As a preliminary matter, Defendants argue that Plaintiff "changed many of his factual allegations in a transparent attempt to eliminate the allegations this Court concluded created reasonable suspicion," and as a result, the Court should reject the allegations in the Amended Complaint that contradict those in the original Complaint, and consider allegations from the original Complaint that Plaintiff omitted in the Amended Complaint. (Dkt. 11-7 at 16-18). "There is authority supporting the notion that a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings." *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-CV-588 KMK, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012); *see Colliton v. Cravath, Swaine & Moore LLP*, No. 08 CIV 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." (alterations in original) (quotations omitted)), *aff'd*, 356 F. App'x 535 (2d Cir. 2009). "However, many courts in this Circuit have held otherwise, and note that '[p]rior inconsistent pleadings, though admissible . . . are controvertible, not conclusive, admissions.'" *Bernadotte v. N.Y. Hosp. Med. Ctr. of Queens*, No. 13-CV-965 MKB, 2014 WL 808013, at *5 (E.D.N.Y. Feb. 28, 2014) (alterations in original) (quoting *The Ltd., Inc. v. McCrory Corp.*, 683 F. Supp. 387, 395 (S.D.N.Y. 1988)).

Defendants contend the following allegations in the Amended Complaint contradict admissions from the original Complaint: Plaintiff originally alleged that the parking lot at Artpark was empty other than his vehicle (Dkt. 1 at ¶ 30), and now claims that at least two

other vehicles were parked there (Dkt. 10 at ¶¶ 39, 47); in the original Complaint, Plaintiff claimed he recognized the driver of the patrol vehicle at Artpark as Stafford (Dkt. 1 at ¶ 31), but now alleges he did not identify Stafford at Artpark (Dkt. 10 at ¶¶ 43-44); and Plaintiff alleged in the original Complaint that Officer Stafford left the Artpark parking lot after running the license plate check (Dkt. 1 at ¶ 36), but now alleges that Stafford left the lot and parked in another lot next to the entrance/exit and remained there until after Plaintiff left the lot (Dkt. 10 at ¶¶ 53, 55, 62-63). The Court finds it need not determine whether it should consider these facts because the contradictions alluded to by Defendants are not material to the Court's determination as to whether Plaintiff's allegations support a finding of reasonable suspicion. In other words, even if the Court considered the facts stated above as alleged in the original Complaint, it would still find that Plaintiff has properly alleged a claim for violation of his Fourth Amendment rights.

Defendants also contend the Court should consider the following allegations stated in the original Complaint but omitted from the Amended Complaint: Plaintiff's reference to the "distinctive" appearance of his vehicle and the photographic exhibits of the truck attached to the original Complaint (Dkt. 1 at ¶ 34), as well as reference to the appearance ticket allegedly issued to Plaintiff by Stafford at Kiwanis Park in 2010 (*id.* at ¶¶ 22-24, 52-55). Courts in this Circuit have held that "[t]he mere fact that a plaintiff has chosen to omit, for strategic reasons, a fact alleged in an earlier pleading does not entitle the Court to consider that fact once it has accepted the amended pleading for filing." *Vasquez v. Yadali*, No. 16-CV-895 (NSR), 2020 WL 1082786, at *3 (S.D.N.Y. Mar. 5, 2020). Although some courts have considered allegations from a prior complaint when deciding a motion to

dismiss, *see Poindexter v. EMI Record Grp. Inc.*, No. 11-cv-559 (LTS)(JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("[E]ven though the Amended Complaint is the operative pleading, the Court may still credit admissions in the original complaint and attached exhibits." (citing *Sulton v. Wright*, 265 F. Supp. 2d 292, 295 (S.D.N.Y. 2003)), the logic relied on by those courts stems from a Second Circuit decision holding that a district court erred in refusing to admit a prior inconsistent pleading as evidence at trial, *see Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989). In the instant matter, "Defendants have failed to present any persuasive authority that a similar rule should apply upon consideration of a motion to dismiss, where the Court is obliged to evaluate the sufficiency of the pleading itself, as well as any materials attached thereto or within the scope of judicial notice." *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 525 (S.D.N.Y.), *aff'd sub nom. Condra v. PXRE Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009); *see Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-cv-588 (KMK), 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012) ("[O]nce an amended pleading is filed, a court may not import information that was contained in the prior pleading but omitted from the amended pleading."). Accordingly, the Court will not consider the allegations omitted from Plaintiff's original Complaint in deciding the instant motion.

The Court finds that it cannot resolve at this stage of the proceedings whether Stafford had reasonable suspicion for the stop. Plaintiff alleges that his pickup truck was one of three vehicles in a parking lot at Artpark, which is a park that receives upwards of 150,000 visitors a year, many of whom travel from out of state. (Dkt. 10 at ¶¶ 34-39). Plaintiff also alleges that his pickup truck had a valid registration sticker, inspection sticker,

and license plates, and that all of the exterior lights on his vehicle were functional. (*Id.* at ¶ 54). The Amended Complaint alleges that after leaving Artpark, Plaintiff drove to a different park that also frequently has out-of-state visitors for a panoramic view of the sunset. (*Id.* at ¶ 70). Plaintiff further alleges that it was not yet dark in the park when Stafford approached him. (*Id.* at ¶¶ 73-79). These allegations do not provide an articulable basis for suspecting criminal activity or even a traffic violation, and at most could give rise to a mere "hunch." *See United States v. Lopez*, No. 3:18-CR-137(RNC), 2020 WL 113774, at *6 (D. Conn. Jan. 10, 2020) (finding "the time of day, the location of the cars, the manner in which the cars were parked, and the fact that the engine of at least one of the cars was running" were "insufficient to support an objectively reasonable suspicion of criminal activity required for a Terry stop"); *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."); *cf. United States v. Bold*, 19 F.3d 99, 103 (2d Cir. 1994) ("[T]he police officers' independent corroboration of the anonymous tipster's information, the unusual location of the car in the parking lot, and the inability of the officers to see in the darkly tinted car windows, when combined with the report of a firearm in the car, provided a sufficient basis under *Terry* for the officers to further investigate by opening the car doors and requesting the occupants to get out for questioning.").

The Court additionally finds that even if the allegations did support a finding of reasonable suspicion, Plaintiff has plausibly alleged that the scope and duration of the stop were unreasonable under the circumstances alleged in the Amended Complaint. "For an

investigative stop based on reasonable suspicion to pass constitutional muster, the ensuing investigation must be reasonably related in scope and duration to the circumstances that justified the stop in the first instance, so as to be minimally intrusive of the individual's Fourth Amendment interests." *United States v. Glover*, 957 F.2d 1004, 1011 (2d Cir. 1992). The Amended Complaint alleges that Stafford questioned Plaintiff for 10 to 15 minutes. (*Id.* at ¶¶ 111-14). Although the allegations indicate that some of the questions asked by Stafford related to Plaintiff's identity (Dkt. 10 at ¶¶ 101-08); *see Hiibel v. 6th Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177, 186 (2004) ("[Q]uestions concerning a suspect's identity are a routine and accepted part of many *Terry* stops."), nothing in the allegations indicates that Stafford's questioning should have lasted more than several minutes.

Because the facts alleged by Plaintiff do not allow the Court to definitely resolve the question of whether Stafford had reasonable suspicion for the stop, the Court finds that the Amended Complaint states a Fourth Amendment claim. Accordingly, Defendants' motion is denied as to the Fourth Amendment claim against Stafford.

## B.  First Amendment Retaliation

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). "Speech directed at

police officers will be protected unless it is likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest." *Kerman v. City of New York*, 261 F.3d 229, 242 (2d Cir. 2001).

Plaintiff has failed to state a First Amendment claim in the Amended Complaint. Plaintiff has not alleged that he engaged in any protected activity such as criticizing the Lewiston Police Department before the alleged incident with Stafford, let alone that Stafford's actions were motivated or caused by Plaintiff's engagement in that protected activity. *See Kamholtz v. Yates County*, 800 F. Supp. 2d 462, 464 (W.D.N.Y. 2011) ("[P]laintiff has not alleged facts showing that he engaged in activity protected under the First Amendment, and . . . he therefore has failed to state a valid retaliation claim under the Free Speech Clause."). Accordingly, the Court grants Defendants' motion as to Plaintiff's First Amendment claims.

### C.    <u>Fourteenth Amendment</u>

Plaintiff also alleges a violation of his due process rights pursuant to the Fourteenth Amendment. (Dkt. 10 at ¶¶ 128-30). However, Plaintiff has not alleged any basis for a due process claim independent of his Fourth Amendment claim, and it is well-established that the Fourth Amendment "provides the proper analytical framework" for evaluating an unreasonable seizure claim, not the Fourteenth Amendment. *See Bryant v. City of New York*, 404 F.3d 128, 135-36 (2d Cir. 2005) ("Substantive due process analysis is . . . inappropriate . . . [where a] claim is 'covered by' the Fourth Amendment." (alterations in original) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)). Accordingly, Defendants' motion is granted as to Plaintiff's Fourteenth Amendment claim.

### D.  Claims Against Lewiston

"[T]o establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2018)).  "[T]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to . . . prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).  Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.  To survive a motion to dismiss, the plaintiff "cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (quotation omitted).  A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

Plaintiff's allegations are not sufficient to establish that a policy or custom exists. Plaintiff alleges that the Lewiston Police Department represents on its website that "all members of the patrol division are highly trained officers capable of responding to a variety of incidents" (Dkt. 10 at ¶ 15), that the Lewiston Police Department "and/or certain active members thereof have been the subject of multiple lawsuits for, among other things, their alleged violations of the First, Fourth, and Fourteenth Amendments" (*id.* at ¶ 16), that the Lewiston Police Department had knowledge that the dog Taser "had been trained to be aggressive and/or intimidating" (*id.* at ¶ 94), and that the Lewiston Police Department "knew or should have known that some members of the public would be intimidated and/or frightened by Taser" (*id.* at ¶ 95). Allegations of one aggressive dog on a police force are not sufficient to plausibly suggest "a practice so widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge of the practice to policymaking officials," or a failure by policymakers to train the deputies, particularly here where the Amended Complaint does not allege that the dog in fact acted aggressively or was actively used to intimidate or injure Plaintiff. *See Tieman v. City of Newburgh*, No. 13-CV-4178 KMK, 2015 WL 1379652, at *16 (S.D.N.Y. Mar. 26, 2015) (finding allegations of testimony by "numerous residents" at a public comment session "regarding the excessive and unnecessary use of police dogs during arrests" failed to "plausibly state that there is a City practice of using excessive force during arrests, generally, or using police dogs so consistent and widespread as to constitute a custom or usage"); *see also Whitfield v. City*

*of Newburgh*, No. 08 CV 8516 (RKE), 2015 WL 9275695, at *29 (S.D.N.Y. Dec. 17, 2015)

(dismissing Plaintiff's claim that the police department's K-9 policy was unconstitutional

because "a single example of excessive force . . . cannot amount to an established policy,

practice, or custom"). Additionally, Plaintiff's allegations regarding "various lawsuits" are

"not probative of the existence of an underlying policy that could be relevant here." *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22-23 (2d Cir. 2012); *see Walker v. City of New York*, No. 14-CV-808 ER, 2015 WL 4254026, at *8 (S.D.N.Y. July 14, 2015) (dismissing

claims of widespread policy or practice where plaintiff "merely list[ed] the names of

numerous lawsuits, without indicating whether they resulted in a finding of liability against

the Officers or the City or providing any specific details about the cases"). Therefore, the

Court grants Defendants' motion as to the claims against Lewiston.

### E. Supervisory Claims

A supervisory defendant must have been personally involved in a constitutional

deprivation to be held liable under § 1983. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.

1986); *see Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("Supervisor liability in

a § 1983 action depends on a showing of some personal responsibility, and cannot rest on

respondeat superior." (citation omitted)). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 556 U.S. at 676. Personal involvement may be shown where:

> A supervisory official, after learning of the violation through a report or
> appeal, . . . failed to remedy the wrong[;] . . . created a policy or custom
> under which unconstitutional practices occurred, or allowed such a policy or
> custom to continue[; or] . . . was grossly negligent in managing subordinates
> who caused the unlawful condition or event.

*Williams*, 781 F.2d at 323-24 (citations omitted). However, a "'plaintiff cannot base liability solely on the defendant's supervisory capacity or the fact that he held the highest position of authority' within the relevant governmental agency or department." *Houghton v. Cardone*, 295 F. Supp. 2d 268, 276 (W.D.N.Y. 2003) (citation omitted); *see also Montero v. Travis*, 171 F.3d 757, 761-62 (2d Cir. 1999) (finding a claim against a parole board chairman was "properly dismissed as frivolous because [the plaintiff] never alleged any facts describing [the chairman's] personal involvement in the claimed constitutional violations").

The only allegation against Salada in the Amended Complaint is that he "is sued individually and in his official capacity as Chief of Police" (Dkt. 10 at ¶ 9), which is not sufficient to allege Salada's personal involvement. *See Williams*, 781 F.2d at 323. Accordingly, the claims against Salada must also be dismissed.

## III.   <u>State Law Claims</u>

Defendants further contend that any state law claims alleged in Plaintiff's Amended Complaint should be dismissed pursuant to Rule 12(b)(6) or 12(b)(1), arguing in part that Plaintiff failed to comply with New York General Municipal Law § 50-i and noting that some courts have indicated that dismissal on those grounds is based on lack of subject matter jurisdiction. (Dkt. 11-7 at 26 n.5). The Court does not address these jurisdictional arguments because it is clear from the Amended Complaint that Plaintiff does not allege any state law claims. (*See* Dkt. 10 at 13-14 (alleging claims for "deprivation of rights"

pursuant to § 1983 under the First, Fourth, and Fourteenth Amendments)).[7]  Plaintiff's

Amended Complaint contains a general assertion at the beginning that the action is brought

pursuant to "the common law of the State of New York" (Dkt. 10 at ¶ 1), and in the

"Wherefore" clause Plaintiff alleges that he seeks damages under "the laws of New York"

(*id.* at 15), but these conclusory allegations are plainly insufficient to assert a claim.

Accordingly, Defendants' motion to dismiss any state law claims pursuant to Rule 12(b)(6)

is granted, and the motion pursuant to Rule 12(b)(1) is denied as moot.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Rule 12(b)(6)

is granted in part and denied in part, and the motion to dismiss pursuant to Rule 12(b)(1)

is denied as moot.  (Dkt. 11).  All of Plaintiff's claims in the Amended Complaint are

dismissed with prejudice with the exception of Plaintiff's claim against Stafford pursuant

to 42 U.S.C. § 1983 based upon the Fourth Amendment.  The Clerk of Court is instructed

to enter judgment in favor of Lewiston and Salada and terminate them from the caption.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:  March 27, 2020
            Rochester, New York

---

[7]      In contrast, the original Complaint included a "Fourth Cause of Action Under
Federal and/or State Law Against All Defendants."  (Dkt. 1 at 11).