UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID E. LILLY,

                Plaintiff,

       v.

SCOTT STAFFORD, individually and in
his official capacity as a Town of Lewiston
Police Officer,

               Defendant.

_____

**DECISION AND ORDER**

1:18-CV-00002 EAW

## INTRODUCTION

Plaintiff David E. Lilly ("Plaintiff"), proceeding *pro se*, commenced the instant lawsuit pursuant to 42 U.S.C. § 1983 alleging defendant Scott Stafford ("Stafford") illegally seized him in violation of the Fourth Amendment. Presently before the Court is Stafford's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. 27). For the reasons that follow, Stafford's motion for summary judgment is granted.

## BACKGROUND

The following facts are derived from Stafford's Statement of Undisputed Material Facts submitted in support of his motion for summary judgment (Dkt. 27-18) ("Stafford's Statement").

The Court notes that Plaintiff failed to file any response to Stafford's motion, including any response to Stafford's Statement. Local Rule of Civil Procedure 56(a)(2) provides that "[e]ach numbered paragraph in the moving party's statement of material facts

may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in [an] opposing statement."  Although a district court should not deem unopposed facts to be admitted when those facts are unsupported by the record, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001), a district court has discretion to deem facts admitted for lack of compliance with its local rules, *see N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (it was within district court's discretion to deem the moving party's statement of material facts admitted where the opposing party "offered mostly conclusory denials" and "failed to include any record citations" contrary to the district's local rules); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (because plaintiff failed to respond to defendant's statement of material facts submitted in accordance with local rules, "the material facts contained in his statement are deemed to be admitted as a matter of law"). Accordingly, the Court has accepted as true the facts set forth in Stafford's Statement, to the extent they are supported by the evidence of record and not directly controverted by facts and exhibits submitted in support thereof.  Where a fact is disputed, the Court has noted the same.

On December 29, 2014, at 4:00 p.m., Stafford, who was employed by the Town of Lewiston as police officer, was working a special detail for the United States Border Patrol. (Stafford's Statement at ¶¶ 10, 11).  Stafford's duties included checking areas of interest along the Niagara River in the Town of Lewiston for potential criminal activities, an area which included the Earl W. Brydges Artpark State Park ("Artpark"), Lewiston Landing Park, and Joseph Davis State Park.  (*Id.* at ¶¶ 13, 14).  In Stafford's experience and training

as a Town of Lewiston officer, these areas were known for trafficking of undocumented individuals and narcotics.  (*Id.* at ¶ 15).

Plaintiff, who was on leave from the Air Force, was visiting his parents in Lewiston, New York, for the holidays, and drove to Artpark in a 1994 Toyota pickup truck with Virginia license plates.  (*Id.* at ¶¶ 22, 23, 29).  He arrived at either 4:00 p.m. or 4:35 p.m. and parked in a parking lot which is not Artpark's main parking area.  (*Id.* at ¶¶ 24, 25, 28). Plaintiff got out of his vehicle to walk his dog.  (*Id.* at ¶ 31).

Stafford observed the vehicle that belonged to Plaintiff and noticed the Virginia license plates.  (*Id.* at ¶¶ 32, 33).  The out-of-state license plates raised concern to Stafford, whose primary task was to discover people involved in the trafficking of drugs and undocumented individuals.  (*Id.* at ¶ 34).  He also noted that the parking lot Plaintiff was parked in is used less frequently than Artpark's main parking lot.  (*Id.* at ¶ 35).  Stafford pulled behind the vehicle for less than thirty seconds to run a license plate search, but was unable to get a signal to complete the search.  (*Id.* at ¶¶ 37, 38).  Stafford did not exit his vehicle or activate his siren or emergency lights.  (*Id.* at ¶¶ 43-44).

While walking his dog, Plaintiff noticed a Lewiston Police Department Patrol SUV enter the parking lot and stop behind his vehicle for approximately 30 seconds.  (*Id.* at ¶ 40).  Plaintiff alleges he was unable to identify the occupant of the patrol vehicle at that time, but when the vehicle got closer, he recognized it to be Stafford.  (*Id.* at ¶ 41).  Plaintiff continued to walk his dog and got back into his vehicle at approximately 4:40 p.m. and left Artpark at approximately 4:45 p.m. (*Id.* at ¶¶ 46, 47).

Stafford left Artpark and proceeded to Lewiston Landing Park. (*Id.* at ¶ 48). Plaintiff also left Artpark and drove to Lewiston Landing Park in order to take photos. (*Id.* at ¶ 51). Plaintiff backed into a parking space which had an embankment behind it. (*Id.* at ¶¶ 53-54).

Stafford recognized Plaintiff's vehicle as the one he had seen at Artpark and decided to investigate whether the vehicle was involved in any criminal activity. (*Id.* at ¶¶ 62, 64). Stafford's decision to investigate was based on the fact that he saw the same vehicle with out-of-state license plates in an approximate one-hour time frame at two different parks known to be locations with criminal activity. (*Id.* at ¶ 66).

Stafford stopped his SUV in front of and approximately perpendicular to Plaintiff's car. (*Id.* at ¶ 70). Stafford rolled his driver's side window down and Plaintiff rolled down his driver's side window as well. (*Id.* at ¶¶ 73-74). Stafford asked Plaintiff a maximum of 12 questions and the encounter between them lasted a maximum of thirteen minutes. (*Id.* at ¶¶ 75-76). The questions included: whether Plaintiff was the individual Stafford saw at Arkpark, to which Plaintiff answered, "I believe so"; if Plaintiff worked at Artpark, to which Plaintiff answered that he did not; if Plaintiff was the person that Stafford had seen at Kiwanis Park in 2010, to which Plaintiff answered, "Yes"; if Ed Lilly was his father, to which Plaintiff answered, "Yes"; what Plaintiff had been doing since high school, to which Plaintiff answered that he had joined the Air Force; if Plaintiff liked being in the Air Force, to which Plaintiff answered "Yes"; where Plaintiff lived, to which Plaintiff answered that he was living in Virginia; if Plaintiff liked living in Virginia, to which Plaintiff answered that he did; what Plaintiff was doing in town, to which he answered that he was in town for

- 4 -

the holidays; how long Plaintiff would be in town, to which Plaintiff answered, "About two weeks"; and where Plaintiff was staying while he was in town, to which Plaintiff answered that he was staying at his parents' house.  (*Id.* at ¶ 77).

Stafford did not activate his emergency lights, exit his vehicle, shine any lights on his vehicle in Stafford's direction, or brandish a flashlight or weapon during the encounter. (*Id.* at ¶¶ 85-92).  Plaintiff was not asked to produce identification or told that he could not exit his vehicle.  (*Id.* at ¶¶ 98, 100).  Stafford's K-9 officer named Taser was with him during the encounter but remained in the back seat of Stafford's patrol SUV the entire time. (*Id.* at ¶¶ 104, 109).  Based on the information obtained during the encounter, Stafford concluded that Plaintiff was not engaged in criminal activity and pulled away and exited the parking lot.  (*Id*. at ¶ 81).

Plaintiff commenced the instant lawsuit on January 2, 2018.  (Dkt. 1).  Defendants filed their answer on April 18, 2018 (Dkt. 2), and on June 22, 2018, they filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 7).  The Court granted Defendants' motion on June 17, 2019, and dismissed Plaintiff's claims without prejudice and with leave to replead.  (Dkt. 9).  On July 16, 2019, Plaintiff submitted an amended complaint.  (Dkt. 10).  Defendants filed a motion to dismiss on July 30, 2019 (Dkt. 11).  On March 27, 2020, the Court granted the motion and dismissed all of Plaintiff's claims in the amended complaint with the exception of Plaintiff's claim against Stafford pursuant to 42 U.S.C. § 1983 based upon the Fourth Amendment.  (Dkt. 14).  Stafford filed the instant motion for summary judgment on January 29, 2021 (Dkt. 27), and no response to the motion was filed.

## DISCUSSION

### I.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown*, 654

F.3d at 358.   Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).   "Moreover, even when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party.   Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."   *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citation omitted).

## II.   <u>Fourth Amendment Claim</u>

Plaintiff's claim arises under 42 U.S.C. § 1983, which provides a federal cause of action against persons who, under color of state authority, caused the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983.   Here, Plaintiff alleges Stafford violated his Fourth Amendment rights pursuant to § 1983.

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause[.]"   U.S. Const. amend IV. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions.   So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required."   *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quotation and citation omitted).

"Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). The Second Circuit has explained:

> Pertinent factors identifying a police seizure can include the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory; prolonged retention of a person's personal effects, such as airplane tickets or identification; and a request by the officer to accompany him to the police station or a police room.

*Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 340 (2d Cir. 2000) (quotation omitted).

Additionally, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). "This form of investigative detention is now known as a *Terry* stop." *Davis v. City of New York*, 959 F. Supp. 2d 324, 333 (S.D.N.Y. 2013).

"While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "The officer [making a *Terry* stop] . . . must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch."'" *Alabama v. White*, 496 U.S. 325, 329 (1990) (alterations in original) (quoting *Terry*, 392 U.S. at 27). "Reasonable suspicion is an objective standard; hence, the

subjective intentions or motives of the officer making the stop are irrelevant." *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000).

"In assessing the reasonableness of an officer's suspicion, we must take into account the totality of the circumstances and must evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016) (citation and quotation omitted). "[T]he proper inquiry is not whether each fact considered in isolation denotes unlawful behavior, but whether all the facts taken together support a reasonable suspicion of wrongdoing." *United States v. Lee*, 916 F.2d 814, 820 (2d Cir. 1990). "It is sometimes the case that a police officer may observe 'a series of acts, each of them perhaps innocent in itself, but which taken together warrant[ ] further investigation.'" *Ligon v. City of New York*, 925 F. Supp. 2d 478, 489 (S.D.N.Y. 2013) (alteration in original) (quoting *Terry*, 392 U.S. at 22).

Stafford contends that Plaintiff's encounter with him did not constitute a seizure, and that even if it did, the encounter at most constitutes a lawful *Terry* stop, which was not unreasonable in scope or duration. (Dkt. 27-19 at 10-29). For the reasons that follow, the Court concludes that the encounter constitutes a lawful *Terry* stop in scope and duration and that Stafford is entitled to summary judgment.

Plaintiff alleges that Stafford blocked his vehicle to question him for an unnecessarily long period of time and that this amounted to a seizure. Stafford acknowledges that a seizure may occur when through a use of force or show of authority, an officer detains an individual in a matter that a reasonable person would not have believed

- 9 -

he was free to leave.  *See Brown*, 221 F.3d at 340.  Stafford contends that notwithstanding the fact that his car was blocking Plaintiff's car, this fact alone is not sufficient to constitute a seizure.  *See Rotbergs v. Guerrera*, No. 3:10CV1423 MRK, 2012 WL 1204729, at *8 (D. Conn. Apr. 11, 2012) ("Even if Officer Guerrera did block Mr. Rotbergs's exit with his car, such a blockage is not sufficient to constitute a Fourth Amendment seizure."); *United States v. Perez*, No. 01 CR. 848 (SWK), 2002 WL 1835601, at *10 (S.D.N.Y. Aug. 8, 2002) (finding that two officers parking in such a way as to prevent a person from moving his vehicle "without more, does not indicate that a seizure took place"); *United States v. Baldwin*, No. CR. 3:97CR188 (AHN), 1998 WL 563851, at *3 (D. Conn. 1998) ("[E]ven if [the plaintiff's] car was blocked in front and in the rear, that fact, in isolation, is insufficient to render the encounter a seizure in light of the totality of the circumstances which indicate that the officers' conduct was not restraining or coercive.").

But in *Pane v. Gramaglia*, 509 F. App'x 101, 103 (2d Cir. 2013), the Second Circuit held that a "reasonable police officer would have known from established precedent that having a fellow officer pull a marked police car with activated turret lights behind [the plaintiff]'s parked car, thereby effectively blocking her movement, and directing the vehicle's spot light toward the interior of [the plaintiff]'s vehicle constituted a seizure that required reasonable suspicion."  While here, Stafford did not activate any emergency lights or shine light into Plaintiff's car, the duration of the questioning coupled with the blocking of the car with a steep embankment behind it does raise a question as to whether the encounter amounted to a seizure.  *See United States v. Lopez*, 432 F. Supp. 3d 99, 110 (D. Conn. 2020) ("A seizure amounting to a *Terry* stop occurs when an officer uses his patrol

car to 'box in' an individual's car, preventing the suspect from driving away.").  The Court need not resolve that question because, as explained below, the Court finds that even if a seizure occurred, Stafford possessed reasonable suspicion for his investigation of Plaintiff pursuant to *Terry* and its progeny.

Specifically, the evidence before the Court, uncontested by Plaintiff due to his failure to respond to the motion, demonstrates that on the date in question, Stafford was employed in a special detail for the United States Border Patrol tasked with investigating areas along the Niagara River for criminal activity.  Two locations known to Stafford that are commonly involved in the trafficking of undocumented persons and narcotics were the two locations where Stafford observed Plaintiff in a one-hour time period: Artpark and Lewiston Landing Park.  In Stafford's experience, due to their proximity to the border, it was not unusual for vehicles to arrive at these locations to retrieve or transport undocumented persons or narcotics entering the United States from the Niagara River. When Stafford observed Plaintiff's vehicle with out-of-state license plates parked in a less frequently used parking lot at Artpark, he attempted to run the license plate but was unsuccessful.  When he saw the same vehicle less than an hour later in a different park, he determined using his training and experience that it was appropriate to investigate if the vehicle was engaged in criminal activity.  The Court finds that the encounter was a legitimate *Terry* stop supported by reasonable suspicion.

Having found that the circumstances of the encounter support a finding of reasonable suspicion, the Court further finds that the scope and duration of the stop were reasonable.  "For an investigative stop based on reasonable suspicion to pass constitutional

muster, the ensuing investigation must be reasonably related in scope and duration to the circumstances that justified the stop in the first instance, so as to be minimally intrusive of the individual's Fourth Amendment interests." *United States v. Glover*, 957 F.2d 1004, 1011 (2d Cir. 1992). Here, taking the facts in the light most favorable to Plaintiff, the encounter lasted a maximum of thirteen minutes. The encounter was not overly intrusive and even by Plaintiff's account, was largely conversational. Both Plaintiff and Stafford remained in their own vehicles for the duration of the encounter that occurred in a public place with no emergency lights or sirens engaged. Further, Plaintiff was not physically restrained, required to produce identification, or directed to comply with any other orders from Stafford. The initial questions asked by Stafford related to Plaintiff's presence at Artpark and his identity. *See Hiibel v. 6th Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177, 186 (2004) ("[Q]uestions concerning a suspect's identity are a routine and accepted part of many *Terry* stops."). The remaining questions about Plaintiff's job and residence resolved Stafford's concerns that Plaintiff was engaged in criminal activity and accordingly, Stafford concluded his questioning of Plaintiff and exited the area. There is no evidence that Stafford unreasonably prolonged the encounter for any purpose beyond a determination of whether Plaintiff's vehicle was involved in illegal activity and the questioning was terminated upon Stafford becoming so satisfied. *Cf. McLeod v. Mickle*, 765 F. App'x 582, 585 (2d Cir. 2019) (reversing dismissal of Fourth Amendment claim where plaintiff's "allegations support a reasonable inference that Stokes prolonged the traffic stop beyond the time needed to issue a citation for McLeod's expired state inspection

- 12 -

sticker and that he did so to pursue an unrelated investigation into whether McLeod was carrying illegal drugs in his vehicle").

## III.    Qualified Immunity

In any event, even were the Court to conclude that genuine issues of material fact exist as to Plaintiff's claim, alternatively, it finds that Stafford is entitled to qualified immunity.

"Qualified immunity insulates public officials from claims for damages where their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Defore v. Premore*, 86 F.3d 48, 50 (2d Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Court "must look to both the clarity of the law establishing the right allegedly violated as well as whether a reasonable person, acting under the circumstances the[n] confronting a defendant, would have understood that his actions were unlawful." *Ford v. McGinnis*, 352 F.3d 582, 596-97 (2d Cir. 2003) (quotation omitted).

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).  "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotation omitted). "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589-90 (citation and quotations omitted).  "It is not enough that the rule is suggested by then-existing precedent.  The

- 13 -

precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590.

"Before a court can determine if the relevant law was clearly established, 'the right allegedly violated must be defined at the appropriate level of specificity.'" *Barnes v. Fedele*, 337 F. Supp. 3d 227, 231 (W.D.N.Y. 2018) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)), *aff'd in part, vacated in part on other grounds, and remanded*, 813 F. App'x 696 (2d Cir. 2020). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 741.

"Defendants moving for summary judgment on the basis of qualified immunity bear the burden of 'demonstrating that no rational jury could conclude (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Vasquez v. Maloney*, 990 F.3d 232, 238 (2d Cir. 2021) (quoting *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012)). In the context of a Fourth Amendment claim, the Second Circuit explains:

> To determine whether a defendant officer is entitled to qualified immunity from a Fourth Amendment claim against him on a motion for summary judgment, we are to assess whether "under clearly established law, every reasonable officer would have concluded that [the defendant's] actions violated [the plaintiff's] Fourth Amendment rights in the particular circumstance presented by the uncontested facts and the facts presumed in [the plaintiff's] favor." *Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017). In other words, summary judgment for the defendant is required where "the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the [defendant's] conduct under the circumstances." *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995).

- 14 -

*Cugini v. City of New York*, 941 F.3d 604, 615 (2d Cir. 2019); *see also Vasquez*, 990 F.3d at 238 ("[A] case directly on point is not necessarily required, but existing precedent must have placed the statutory or constitutional question beyond debate. That is, there must be a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment, such that the unlawfulness of the defendant officer's conduct would follow immediately." (internal citations and quotations omitted)).

Separate and apart from whether police officers in Stafford's circumstances could reasonably believe that the encounter did not constitute a seizure, arguably warranting qualified immunity on that ground alone, the issue here is whether an officer could reasonably believe that it was a violation of the Fourth Amendment to investigate Plaintiff's vehicle by blocking Plaintiff's car to ask him a series of questions where the evidence is undisputed that the vehicle had out-of-state plates and was in two locations near the United States border within the same hour, with both locations known by the officer to be areas where criminal activity occurred. There is no clearly established law such that would compel every reasonable officer to conclude that Stafford lacked arguable reasonable suspicion on the circumstances presented and violated Plaintiff's Fourth Amendment rights. *See Muschette on Behalf of A.M. v. Gionfriddo*, 910 F.3d 65, 70 (2d Cir. 2019) ("To determine whether the relevant law was clearly established, we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." (citation and quotation)); *Ferguson v. City of New York*, No. 17-CV-4090

(BMC), 2018 WL 3233131, at *5 (E.D.N.Y. July 2, 2018) (granting summary judgment on plaintiff's unlawful seizure claim based on *Terry* stop even though court concluded officer lacked reasonable suspicion to stop plaintiff), *on reconsideration in part*, No. 17-CV-4090 (BMC), 2018 WL 3626427 (E.D.N.Y. July 30, 2018).  Nor did clearly established law dictate that that the length and scope of the encounter here was unreasonable.  In other words, because the undisputed facts establish reasonable suspicion for the encounter and the circumstances surrounding it, as explained above, Stafford is entitled to qualified immunity on Plaintiff's Fourth Amendment claim.  Accordingly, Stafford is granted summary judgment on Plaintiff's Fourth Amendment claim.

## **CONCLUSION**

For the foregoing reasons, Stafford's motion for summary judgment (Dkt. 27) is granted.  The Clerk of Court is instructed to enter judgment in favor of Stafford and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: August 24, 2021
     Rochester, New York